UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KNOBĒZ LLC,
a Florida Limited Liability Company,

      Plaintiff,                       CASE NO.:

v.                                **JURY TRIAL DEMANDED**

LOWE'S HOME CENTERS, LLC,
a North Carolina Limited
Liability Company,

      Defendant.
_____/

## **COMPLAINT**

Plaintiff, Knobēz, LLC ("Knobēz") hereby sues Defendant, Lowe's Home Centers, LLC ("Lowe's"), and states as follows:

## **NATURE OF THE ACTION**

1.    Knobēz brings this action to stop Lowe's willful patent infringement of United States Patent No. 12,256,843 (the "'843 Patent"), titled "Decorative Knob Cover."

2.    Knobēz is a local small business founded in 2022 by Morgan Uhl ("Mrs. Uhl"). Knobēz markets and sells innovative decorative knob and handle covers, which provide clutter-free home décor options for all seasons, especially Christmas. In its short time on the market, Knobēz's most popular product,

1

the Red Peppermint, has become a viral sensation and is an extremely popular Christmas decoration.

3.    Without regard to Knobēz's patent rights, Lowe's is exploiting the popularity of the Red Peppermint by aggressively marketing, importing, and selling a knockoff product—the "Holiday Living 1-1/2-in Red Round Modern Cabinet Knob 10-Pack," Item #6853417, Model #08-3894 (the "Accused Product"). The Accused Product infringes the '843 Patent, yet Lowes continues to sell it despite notice of the '843 Patent. Accordingly, Knobēz brings this action for patent infringement under 35 U.S.C. § 271, seeking remedies provided by 35 U.S.C. §§ 281 and 283–85, as Lowe's unauthorized conduct has diverted sales from Knobēz and undermined its customer relationships during a critical holiday season.

## PARTIES, JURISDICTION, AND VENUE

4.    Knobēz, LLC, is a limited liability company organized and existing under the laws of Florida, with its principal place of business in Lutz, Florida.

5.    Defendant Lowe's is a limited liability company organized and existing under the laws of North Carolina, with its principal office in Mooresville, North Carolina. Lowe's is registered to do business in Florida.

6.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a).

7.     This Court has personal jurisdiction over Lowe's because Lowe's has purposefully availed itself of the privilege of conducting business in Florida, including by operating physical retail stores, employing personnel, and offering for sale and selling the Accused Product to customers in the Middle District of Florida. Lowe's derives substantial revenue from goods sold in Florida and has committed acts of patent infringement in this District giving rise to Knobēz's claims.

8.     Venue is proper in this District at least under 28 U.S.C. § 1400(b) because Lowe's has committed acts of infringement in this District, including by offering to sell and selling the Accused Product from its retail stores located in Tampa, Florida and elsewhere in the Middle District of Florida, and because Lowe's maintains regular and established places of business in this District, including physical retail store locations from which it conducts business, employs personnel, displays its signage and branding, and sells products to customers.

**<u>MORGAN UHL CREATES KNOBĒZ DECORATIVE KNOB COVERS</u>**

9.     Morgan Uhl is the sole inventor of the '843 Patent, and the founder and CEO of Knobēz.

10.    Before founding Knobēz, Mrs. Uhl dedicated her career to teaching elementary school students in Hillsborough County, Florida, where she

enthusiastically inspired creativity and problem-solving in her classroom and community.

11.    Like many small business owners, Mrs. Uhl's entrepreneurial journey began at home. In late 2021, while preparing to host family and friends for the Christmas holidays, she found herself clearing off her counters and had a simple but powerful idea: what if cabinet knobs could be transformed into ornaments, adding a touch of holiday spirit without taking up precious space?

12.    Mrs. Uhl scoured stores and online retailers for a product that would let her decorate her cabinet knobs, but found nothing that fit her vision. Rather than give up there, Mrs. Uhl invented a product that brought her vision to fruition.

13.    Drawing on her creativity and resourcefulness, Mrs. Uhl innovated a unique decorative knob cover that stretches over existing cabinet knobs, instantly turning them into festive, clutter-free accents.

14.    The path from innovative idea to a commercial product was not easy. In the face of numerous setbacks and difficulties, Mrs. Uhl persisted and continued developing her products.

15.    Ultimately, Mrs. Uhl launched her first protype collection, the Glitter Knobēz decorative knob covers. She decorated and sealed each piece by hand with the help of her husband and children.

16.    Armed with her dream and prototype product, Mrs. Uhl tirelessly promoted and shared her invention on social media and through trade shows to promote clutter-free decoration to home-décor enthusiasts.

17.    The response was enthusiastic: Homeowners and online communities embraced her products as a winsome, innovative way to decorate for the holidays and beyond.

18.    Recognizing the potential to share her innovative, clutter-free products with a wider audience, Mrs. Uhl established Knobēz as a Florida limited liability company in April 2022.

19.    Fueled by strong consumer interest and her own passion for creative home décor, Mrs. Uhl has continued to expand Knobēz's product line. Since 2022, Knobēz has grown to offer nearly thirty unique collections for a variety of holidays, including Valentine's Day, Easter, as well as seasons, including fall and summer.  Those collections are featured and sold directly to consumers on the Knobēz website, www.knobez.com.

20.    Knobēz's Red Peppermint product is depicted below:

 



21.    Naturally, the beauty of Knobēz products has attracted extensive earned media attention and generated incredible growth. What began as a novel idea in Mrs. Uhl's home is now a flourishing, successful small business.

22.    Knobēz's products have been featured in national media, including *Today*, *Forbes*, *Good Housekeeping*, and *Glamour*.  Indeed, *Forbes Magazine* published an article highlighting Knobēz's products as a 2025 Easter Basket "must have."  *See* 2025 Easter Basket Must-Haves: Peeps, Candy And More.

23.    Mrs. Uhl's inventions have also received industry recognition, including her nomination for the Women in Toys Designer/Inventor Independent category. *See* Women in Toys 2025 Nominees.

24.    In sum, Knobēz's products are a viral success with consumers, with much of the company's growth driven organically through word of mouth and social media sharing.

25.    Among Knobēz's offerings, the Red Peppermint stands out as a "hero" product and was one of Mrs. Uhl's earliest designs. Many consumers are first introduced to Knobēz through the Red Peppermint during the holiday season, which often leads to repeat purchases of other Knobēz decorative knob cover collections and long-term customer relationships. The company's reputation for quality and creativity has fostered a loyal and enthusiastic customer base.

## THE '843 PATENT

26.    Mrs. Uhl applied for a patent with the United States Patent and Trademark ("USPTO") on June 23, 2022, to protect her new invention.

27.    On March 25, 2025, the USPTO issued the '843 Patent. A true and correct copy of the '843 Patent is attached hereto as **Exhibit A**.

28.    The '843 Patent discloses removable decorative knob covers configured to connect to an existing knob, either through an elastomeric shaft that is friction fit over an existing fixed knob, or through a clasp.

29.    For example, figure 4 of the '843 Patent, shown as Figure 1 below, depicts the following embodiment of a decorative knob cover:



*Figure 1.*

30.    Knobēz is the assignee of the '843 Patent, and thus holds the exclusive right to make, use, develop, offer for sale, and sell products covered by the claims of the '843 patent, including the right to assert, defend, maintain, and enforce the '843 patent.

## LOWE'S INFRINGES KNOBĒZ'S '843 PATENT

31.     Unfortunately, the success and popularity of Knobēz has attracted imitators seeking to wrongfully capitalize on Mrs. Uhl's innovation by selling infringing imitations. These knock-off products are typically of inferior quality, such as poor "fit" and the color "rubbing off" on consumers' hands, resulting in negative first impressions of decorative knob covers that are often incorrectly associated with Knobēz.

32.     It is both challenging and costly to correct consumer misconceptions once they have had a negative interaction with an inferior imitation, especially given the difficulties of building brand awareness and reintroducing consumers to Knobēz's product.

33.     Despite these challenges, Mrs. Uhl and Knobēz have worked diligently to address infringement of the '843 Patent.

34.     Most recently, at a time of peak demand for Knobēz products, and especially the Red Peppermint, Mrs. Uhl  learned of a new infringer of the '843 patent.

35.     Lowe's, a behemoth brick-and-mortar retailer with over 1,700 retail stores in the U.S.A., started selling a product called "Holiday Living 1-1/2-in Red Round Modern Cabinet Knob 10-Pack," Item #6853417, Model #08-3894 (the "Accused Product"), as shown in Figure 2, below:



*Figure 2.*

36.    Mrs. Uhl and Knobēz promptly investigated the Accused Product and discovered that it was also being offered for sale through Lowe's online retail portal. The Accused Product is available for purchase on Lowes.com at the following link: https://www.lowes.com/pd/Holiday-Living-1-1-2-in-Red-Round-Modern-Cabinet-Knob-10-Pack/5016202891?idProductFound=false&idExtracted=true

37.    A screenshot of the online retail listing for the Accused Product, sold and offered for sale on Lowes.com as of November 24, 2025, is shown below in Figure 3:



*Figure 3.*

38.     The Accused Product meets each and every limitation, either literally or under the Doctrine of Equivalents, of at least claims 1 and 7 of the '843 Patent.

39.     The description provided on Lowes.com for the Accused Product provides that "[t]his versatile decoration is perfect for kitchen cabinets, bedroom drawers, and a variety of other furniture pieces. Its unique design promises to give your home a charming flair, making it a fun addition to your holiday décor" and further states that "Peppermint Cabinet Knob

Covers are made of durable acrylic and soft silicone," that the product can be used to "[u]pdate your holiday decorations with these fun peppermint knob covers," and that it is "[e]asy to install."

40. Knobēz promptly acquired the Accused Product to determine whether it infringed the '843 Patent. As shown in Figure 4 below, the product's packaging indicates that it is marketed as "decorative knob covers," is distributed by Lowe's Home Centers LLC, and is manufactured in Vietnam:



*Figure 4.*

41. The Accused Product is configured for friction-fit attachment, as depicted in Figure 5 below. The product's instructions describe "stretching" the opening and "positioning" it over the cabinet knob to cover it "completely," as detailed in Figure 5 below:



*Figure 5.*

42. The Accused Product includes a handle connected to the fitting at one end of the shaft, with the opposite end featuring a decorative cover. Additionally, the Accused Product features a decorative surface of a candy cane swirl, as shown in Figure 6 below:

13





*Figure 6.*

43.     Accordingly, the Accused Product meets every claim limitation, either literally or under the Doctrine of Equivalents, of at least claims 1 and 7 of the '843 Patent.

44.     Lowe's has no license or right to sell the Accused Product.

**<u>LOWE'S INFRINGEMENT IS WILLFUL</u>**

45.     On October 31, 2025, Knobēz sent a letter to Lowe's Chief Legal Officer, notifying Lowe's that the sale and distribution of the Accused Product constituted infringement of Knobēz's intellectual property rights

14

protected under 35 U.S.C. § 271, and demanding that Lowe's promptly remove the Accused Product from all online platforms and physical retail stores.[1] A true and correct copy of Knobēz's October 31, 2025 letter is attached hereto as **Exhibit B**.

46.     Given the imminent holiday season, Knobēz's letter emphasized that "time is of the essence," and demanded that Lowe's immediately cease selling, listing, advertising, or otherwise making available the Accused Product in any form or medium, including in-store sales and displays. The letter further demanded that Lowe's disclose the source and manufacturer of the Accused Product and provide written confirmation of compliance. Knobēz also offered Lowe's the opportunity to partner with Knobēz to lawfully sell Knobēz products.

47.     On November 4, 2025, senior counsel for Lowe's responded to Knobēz, stating that Lowe's would begin investigating the claims set forth in Knobēz's October 31, 2025 letter. A true and correct copy of Lowe's November 4, 2025 letter is attached hereto as **Exhibit C**.

---

[1] Knobēz addressed its October 31, 2025 letter to Lowe's Companies, Inc., the parent company of Lowe's Home Centers, LLC, and Lowe's Home Centers, LLC. The companies share the same principal office address.

48.    In its response, Lowe's requested that Knobēz provide any additional facts or materials relevant to its investigation and allow sufficient time for review.

49.    In good faith, on November 6, 2025, Knobēz promptly provided Lowe's with a detailed patent claim chart demonstrating how the Accused Product infringed at least claims 1 and 7 of the '843 Patent. A true and correct copy of Knobēz's November 6, 2025 correspondence and the patent claim chart provided to Lowe's is attached hereto as **Exhibit D**.

50.    Having received the demand letter, additional requested time, and claim charts from Knobēz, Lowe's ghosted Knobēz.

51.    Since then, Lowe's has continued to sell *thousands* of the Accused Product in its physical retail stores, including its Tampa, Florida, locations, and on its online platform, Lowes.com.

52.    To date, Lowe's has refused to remove the Accused Product from its online platform or physical stores, and the Accused Product remains available for purchase on Lowes.com.

53.    Lowe's has continued to sell the Accused Product in high volumes. As of December 9, 2025, Lowe's own website indicates that it has sold over 1,000 units of the Accused Product for the past six weeks through Lowes.com.

54.    Upon information and belief, Lowe's is selling the Accused Products in physical retail stores nationwide.

55.    Consumers who have purchased the Accused Product have shared their experiences online, often through reviews and social media posts. Some reviews and posts mention that the quality of the item is poor or that the decoration rubs off. As a result, Knobēz has lost valuable opportunities to provide consumers with a positive first impression of decorative knob covers, its products, and to establish direct customer relationships.

56.    Knobēz has had to devote significant time and resources to monitoring and responding to these posts, clarifying that the Accused Product is a knock-off and not affiliated with Knobēz, and working to educate consumers about the genuine Knobēz brand and products.

57.    Lowe's sale of the Accused Product has directly impacted Knobēz's ability to benefit from its patented inventions by diverting sales and market opportunities away from Knobēz. For example, after one of Knobēz's content creators posted a video showcasing the authentic Red Peppermint, a consumer responded by stating that Lowe's had the product in stock, and another consumer expressed an intent to purchase the Accused Product from Lowe's as opposed to the authentic Red Peppermint.

58.    Unlike prior instances involving smaller online infringers, the involvement of a national big-box retailer has made an infringing product

widely accessible to the American market, particularly during the peak demand season for the Red Peppermint, thereby directly harming Knobēz's sales, ideas, and infringing its patent rights.

59.    Lowe's unauthorized sale of the infringing Accused Product has:

a.    Made infringing products easily accessible to consumers in person, increasing the likelihood of consumer confusion and lost opportunities for Knobēz to provide a positive first impression and build customer relationships;

b.    Harmed Knobēz's sales and exclusive market during the critical holiday season, when demand for the Red Peppermint is at its peak;

c.    Resulted in substantial financial losses and lost profits for Knobēz products. Lowe's has advertised that it has sold *at least* 1,000 ten-count packages of the Accused Product on Lowes.com alone each week for the past six weeks.

d.    Directly impacted inventory and sales, as unsold inventory due to the presence of the Accused Product compounds losses.

e.    Caused ongoing damage to Knobēz's brand recognition and the value of its intellectual property. Lowe's unlawful conduct undermines brand confidence in Knobēz and its products, as its

18

willful infringement of Knobēz's patent rights threatens not only the perceived strength of those rights, but also jeopardizes Knobēz's ability to grow, expand, and further develop its business.

    f.    Increased confusion in the marketplace, as consumers believe that Lowe's is selling genuine Knobēz products or mistakenly identify the Accused Product as an authentic Knobēz product.

60.    The scale and visibility of Lowe's willful patent infringement have amplified the damage to Knobēz's sales, brand, reputation, and business.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 12,256,843**

61.    Knobēz incorporates by reference the allegations in paragraphs 1 through 60 of this pleading as if fully set forth herein.

62.    Lowe's has infringed and is infringing at least claims 1 and 7 of the '843 Patent in violation of 35 U.S.C. § 271(a) by offering to sell, selling, and importing for sale the Accused Product.

63.    Lowe's has directly infringed and is directly infringing at least claims 1 and 7 of the '843 Patent by offering to sell and selling the Accused Product and importing the Accused Product into the United States from Vietnam.

64.    The full extent of Lowe's infringement is not presently known to Knobēz.  Knobēz makes this preliminary identification of infringing products and infringed claims in Count 1 without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

65.    As a direct result of Lowe's infringement of the '843 Patent, Knobēz has suffered and continues to suffer substantial damages, including, but not limited to:

a.  Lost sales and market share, particularly during the critical holiday season when demand for the Red Peppermint Knobēz is at its peak;

b.  Unsold inventory costs due to diminished demand for the genuine product;

c.  Lost opportunities to establish first impressions and build lasting customer relationships;

d.  Significant expenditures of time and resources to educate consumers and mitigate confusion in the marketplace;

e.  Ongoing damage to Knobēz's brand recognition and intellectual property value; and

f.  Significant risk of undermining investor and brand confidence.

66.    Lowe's ongoing infringement is causing irreparable harm to Knobēz for which there is no adequate remedy at law, and such harm will continue unless Lowe's is enjoined by this Court. This irreparable harm is especially acute given the seasonality of the Red Peppermint, the nearly identical nature of the Accused Product, and the fact that the Red Peppermint is Knobēz's flagship product that often initiates long-term customer relationships and brand loyalty.

67.    Lowe's has had actual knowledge of the '843 Patent since at least early November 2025, when it received a copy of the '843 Patent and a detailed claim chart demonstrating how the Accused Product infringes at least claims 1 and 7 of the '843 Patent. Despite this pre-suit knowledge, Lowe's has willfully continued to sell, market, and distribute the Accused Product, refusing to cease its infringing activities, and failing to engage in further correspondence with Knobēz.

68.    Lowe's ongoing infringement, in the face of clear notice and supporting documentation, demonstrates willful blindness or reckless disregard for Knobēz's patent rights. This conduct supports a plausible inference that Lowe's infringement is willful, egregious, and in bad faith, warranting enhanced damages under 35 U.S.C. § 284 and an award of attorneys' fees and costs under 35 U.S.C. § 285.

WHEREFORE, Knobēz respectfully asks this Court to enter judgment against Lowe's as follows:

a. Declaring that Lowe's has infringed the claims of the '843 Patent in violation of 35 U.S.C. § 271 (a);

b. Granting a temporary and preliminary injunction pursuant to 35 U.S.C. § 283, preliminarily and permanently enjoining Lowe's, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '843 Patent;

c. Ordering Lowe's to account and pay damages adequate to compensate Knobēz for Lowe's infringement of the '843 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

d. Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

e. Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

22

f.  Declaring this case exceptional and awarding Knobēz its reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

g.  Awarding such other and further relief as this Court deems just and proper.

## JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38, Knobēz hereby demands a jury trial on all issues triable before a jury.

Date:  December 9, 2025.                    Respectfully submitted,


*/s/ Alejandro J. Fernandez*
**Alejandro J. Fernandez, Lead Trial Counsel**
Florida Bar No. 32221
Email: alejandro.fernandez@akerman.com
**Keenan Molaskey, Esquire**
Florida Bar No. 1031827
Email: keenan.molaskey@akerman.com
**Keiana R. Wilkerson, Esquire**
Florida Bar No. 1050221
Email: keiana.wilkerson@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Telephone No.: (813) 223-7333
Facsimile No.: (813) 223-2837
Secondary Email:
nicole.emmett@akerman.com

*Counsel for KNOBĒZ LLC*